IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

GREG E. LINDBERG,

Plaintiff,

v.

HUGH STEVEN WILSON; CHRIS NICKERSON; UK ATLANTA HOLDINGS LLC; DAMOVO GLOBAL SERVICES (UK) LIMITED; DAMOVO DEUTSCHLAND GMBH & CO. KG; DAMOVO IRELAND LIMITED; DAMOVO SCHWEIZ AG; DAMOVO LUXEMBOURG S.à R.L.; DAMOVO COSTA RICA SRL; and JOHN DOE BUYER COMPANY,

Defendants.

Civil Action No. 1:26-cv-03939-GPG

District Judge Gordon P. Gallagher

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*8:43 am, Oct 02, 2026*
**JEFFREY P. COLWELL, CLERK**

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER OF SEPTEMBER 21, 2026 (DOC. 13)

Plaintiff Greg E. Lindberg, pro se, moves under Fed. R. Civ. P. 54(b) and the Court's inherent authority for reconsideration of the Order of September 21, 2026 (Doc. 13), which characterized this action as "an attempted collateral attack" on the restitution proceedings in the Western District of North Carolina, declined "as a matter of discretion to intervene" in proceedings "being capably overseen by a sister court," and denied Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. 11) with prejudice. As relief incident to reconsideration, Plaintiff requests to be heard under Fed. R. Evid. 201(e) on the judicially noticed matters on which the Order rests, and asks that the preliminary-injunction request be set for hearing on notice.

Plaintiff does not ask this Court to revisit his conviction, sentence, or restitution order, or to review anything the sister court has done. He asks this Court to adjudicate Colorado-law claims against a Colorado trustee and a Colorado-resident chief executive who are selling a company held in trust for the payment of Plaintiff's restitution—for no

proceeds, after rejecting a financed $400 million offer—while approximately $17.5 million in "consent fees" goes to the parties whose signatures the sale requires and ten dollars goes to the insurance estates the restitution order exists to compensate.

The Order rests on two premises drawn by judicial notice from the sister court's docket, without a hearing: that the Damovo sale is part of a restitution process that court is overseeing, and that Plaintiff's challenges to the Special Master there are "increasingly specious." That court's own record refutes both. The Special Master has told it that he is not "conducting or otherwise responsible for" the transaction, that no one seeks his consent "or the approval of this Court" to close it, and that the court "lacks authority over those involved." Ex. 4 (Doc. 334) at 2–5; Ex. 5 (Doc. 335) at 2. The order this Court cited holds that the Special Master "has no role in NHC's plan to manage or sell the SACs." Ex. 3 (Doc. 330) at 7. And the word "specious" does not appear in Doc. 330; the motions presenting Plaintiff's pending challenge—grounded in the Special Master's own written admission of ex parte communications "[f]rom the outset," Ex. 2 (Doc. 288) at 10—were filed the day Doc. 330 was docketed and remain undecided. This Court thus deferred to an oversight its overseer disclaims, over a transaction that officer says he will not stop. The consequence—that no court reviews the disposition of a $400 million restitution asset for zero proceeds before it closes—is the manifest injustice reconsideration exists to prevent.

**STATEMENT REGARDING CONFERRAL (D.C.COLO.LCivR 7.1(a))**

Plaintiff is an unrepresented party in the custody of the Bureau of Prisons and is exempt from the duty to confer. D.C.COLO.LCivR 7.1(b)(1). No Defendant has appeared.

Plaintiff has nonetheless served this Motion on each Defendant by e-mail and first-class mail on the date of filing.

## LEGAL STANDARD

An order denying a preliminary injunction "may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). A district court "always has the inherent power to reconsider its interlocutory rulings," and is encouraged to do so "where error is apparent," *Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1243 (10th Cir. 2007), unconstrained by Rules 59(e) and 60(b), *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv. II, LLC*, 887 F.3d 1003, 1023–24 (10th Cir. 2018). Courts in this District look to *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000): new evidence, a change in law, or "the need to correct clear error or prevent manifest injustice." Each is present. The Order rests on judicially noticed matters on which Plaintiff was not heard; the sister court's record contradicts the premises drawn from it; and the Order forecloses review of an irreversible disposition in every court where it could be reviewed.

## BACKGROUND

### A. What this action is, and what it is not.

The Verified Complaint (Doc. 1) pleads breach of trust and fiduciary duty, aiding and abetting, conspiracy, and conversion against Hugh Steven Wilson, trustee of the Change of Control Trust for the Damovo Group (the "Damovo Trust"); Chris Nickerson, Damovo's chief executive, a Breckenridge, Colorado resident; the Damovo operating companies; and an unidentified buyer. Compl. ¶¶ 10–12, 21, 25–26. The Damovo Trust is administered in this District; it was created in 2021 to hold Damovo's equity during

Plaintiff's federal case; its instrument forbids any "Disposition" of Damovo without the Settlor's prior written consent, never sought; and its trustee is negotiating a sale for assumption of debt—no proceeds—after a written $400 million enterprise-value proposal from Twelve Seas Investment Company III, a NASDAQ-listed acquirer holding $175 million in trust, was rejected on September 7, 2026 "due to timing and structure." Compl. ¶¶ 4, 38, 48–63, 110; Doc. 11-1 ¶¶ 4–8 & Ex. 1. Doc. 11 seeks an order restraining disposition of the trust res pending adjudication.

The Verified Complaint does not name the United States, the Special Master, or any officer of the sister court, and does not seek to vacate, enjoin, or evade any order of that court. It pleads the Order Appointing Special Master as a source of the duty Defendants are breaching: Damovo is a designated Primary Restitution Asset to be liquidated only "with Court approval," and Defendants are selling it with no approval from anyone. Compl. ¶¶ 39–46.

### B. The appointing order, and what the sister court's officers say it does not do.

The appointing order directs the Special Master to value the assets available for liquidation, to "select an appropriate method and timetable and seek Court approval to liquidate," and to "oversee and help accomplish the liquidation with Court approval," because "it is imperative that the parties take steps to maximize the amount of restitution that is recovered and paid." Ex. 1 (Doc. 56) ¶¶ 3(b)–(d), 6. It does not state the circumstances in which the Special Master may communicate ex parte. See Fed. R. Civ. P. 53(b)(2)(B).

When Plaintiff asked the sister court to stay the Damovo disposition and require that it be brought before that court for approval (Doc. 320), the Special Master and the United States each opposed on the ground that the sale is not theirs to control. The Special Master: "neither the Special Master nor NHC is conducting or otherwise responsible for the Potential Damovo Transaction"; no lender or acquirer "seeks the consent of the Special Master—or the approval of this Court—to close"; "the Special Master does not intend to interfere with, or otherwise oppose, the transaction"; "the Special Master does not control the liquidation of the SACs"; and "this Court lacks authority over those involved with the Potential Damovo Transaction." Ex. 4 (Doc. 334) at 2–5. The United States: "The Special Master in this case is not the party controlling and selling Damovo," and the forum for any approval question "is not here." Ex. 5 (Doc. 335) at 2, 4. The Special Master had earlier said that "the Court is supervising neither the judgment execution process nor NHC's sale of any SACs." Ex. 2 (Doc. 288) at 17.

The sister court adopted those positions. Doc. 330 holds that the appointing order "did not make the Special Master a general receiver over the Primary Restitution Assets," that he "only took control over whatever remaining interest, if any, Defendant had in those assets," and that "[t]he Special Master has no role in NHC's plan to manage or sell the SACs." Ex. 3 (Doc. 330) at 5–7 & n.2.

The North Carolina insurance companies, meanwhile, have told the Wake County court that the transaction "must be treated going forward under federal restitution law by the Federal Court," that there are no "sale proceeds" "in the traditional sense," and that value is paid as "consent fees" to the Bermuda liquidators and NHC. Ex. 11 ¶¶ 6–10 &

nn.4, 5, 7. No motion seeking the sister court's approval of any Damovo disposition has ever been filed. Decl. ¶ 6.

**C. The rejection of the $400 million offer, and the Order.**

On September 7, 2026, Lincoln International, "running the sell-side process on behalf of the company," rejected Twelve Seas' draft letter of intent because the sellers "don't think that your proposal works for them commercially due to timing and structure." Doc. 11-1, Ex. 1. Those paid only if the zero-proceeds sale closes include Defendant Nickerson, who stands to receive "transfer of control payments" contingent on it. Doc. 11-1 ¶ 8; Compl. ¶¶ 64–67.

The Order took judicial notice, sua sponte, of Docs. 245 and 330, and concluded that "[t]his case is an attempted collateral attack," that Plaintiff "began filing increasingly specious challenges to the special master's actions," and that the restitution proceedings are "being capably overseen by a sister court." Doc. 13 at 2–3. Alternatively, applying Rule 65(b)(1)(A), the Court found no irreparable harm "so imminent that Defendants cannot be heard," noted Plaintiff's inability to post a bond, and denied Doc. 11 in full "WITH PREJUDICE." Id. at 3–4. Plaintiff was not heard on the judicial notice or the inferences drawn from it.

## ARGUMENT

**I. This action is not a collateral attack, because the proceeding it supposedly attacks does not reach the Damovo sale.**

**A. A collateral attack seeks to avoid a judgment; this action seeks to enforce one.**

A collateral attack is an effort to circumvent a court's order by suing elsewhere. *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). In the criminal context a civil claim is barred when success "would necessarily imply the invalidity" of the conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Success here would leave Plaintiff's conviction, sentence, and restitution obligation where they stand; the only change is that Damovo would not be conveyed for nothing before any court examined the transaction. A suit to preserve the res of a restitution order is not an attack on it.

Nor does the action evade the sister court. Plaintiff went there first: he moved to stay the Damovo disposition and require its presentation for approval (Doc. 320), responded to the oppositions (Doc. 339), and disclosed this action and the Southern District of New York action to that court and each court to the others. Doc. 11 § VII; Doc. 11-1 ¶¶ 10–11. He asked the issuing court for relief, and its officers answered that the relief was not that court's to give.

**B. The sister court's officers have disclaimed control over the sale, and that court has adopted the disclaimer.**

The Order's premise is that the sale is part of proceedings "being capably overseen by a sister court." Doc. 13 at 3. The record of that court says otherwise in the words of every participant but Plaintiff, who has preserved his disagreement. Ex. 6 (Doc. 339); Ex. 10 (Doc. 347). But he is entitled to hold the Special Master and the United States to what they told a federal court to defeat his request for relief there, and this Court should not permit the same positions to defeat his request here. Cf. *New Hampshire v. Maine*, 532

U.S. 742, 749–51 (2001). The Special Master cannot be, for purposes of Doc. 320, an officer who "does not control the liquidation of the SACs," and, for purposes of Doc. 11, an officer whose oversight of that liquidation is so complete that this Court must stand aside. Taken at their word, the sister court's officers describe a transaction that is not before that court and that its appointee has undertaken not to oppose. That is the absence of oversight, and a suit against the private parties conducting the transaction fills the gap those proceedings leave open.

### C. No abstention or comity doctrine permits declining jurisdiction over these claims.

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). The obligation is "virtually unflagging"; abstention is "the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976). The Order identifies no abstention doctrine, and none applies. *Colorado River* permits deference only to a parallel proceeding in which "substantially the same parties litigate substantially the same issues." *Fox v. Maulding*, 16 F.3d 1079, 1081–82 (10th Cir. 1994). The sister court's proceeding is a criminal case between the United States and Plaintiff; this is a civil case against a trustee, a corporate officer, and a buyer, none of whom is a party there. Ex. 4 (Doc. 334) at 4. Prior exclusive jurisdiction, *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939), requires a court that has assumed jurisdiction over the res; the sister court has disclaimed it, and the Damovo Trust is not among the things the Special Master controls. Ex. 3 (Doc. 330) at 6; Ex. 4 (Doc. 334) at 2, 4. And no rule of comity permits one district court to decline claims within its jurisdiction

because another court is "overseeing" a matter when that court's own record shows it is not. Comity is deference to what another court is doing, not a reason to leave undone what no court is doing.

### D. Under the Order, no court reviews the disposition of a $400 million restitution asset before it closes.

The forums describe a closed circle. The United States tells the sister court the approval question belongs to Wake County. Ex. 5 (Doc. 335) at 4–5. The Wake County movants tell the state court the transaction "must be treated . . . under federal restitution law by the Federal Court." Ex. 11 ¶ 7 n.5. The Special Master tells the sister court it "lacks authority over those involved." Ex. 4 (Doc. 334) at 5. And this Court, the only court with the trustee, the chief executive, and the trust before it, has declined to act because the sister court is overseeing the matter. Each forum defers to another; none reviews the transaction; and a closing whose date and counterparty Plaintiff does not know is approaching. Decl. ¶ 7. When the ground of a discretionary ruling turns out not to exist, adherence to it is manifest injustice. *Servants of the Paraclete*, 204 F.3d at 1012.

## II. The "specious" characterization and the reliance on the Special Master's oversight were reached by judicial notice without a hearing and do not survive the record.

### A. Plaintiff is entitled to be heard under Rule 201(e); judicial notice reaches documents, not characterizations drawn from them.

"[I]f the court takes judicial notice before notifying a party, the party, on request, may still be heard." Fed. R. Evid. 201(e). This is that request. The Order cited *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006), under which noticed documents "may

only be considered to show their contents, not to prove the truth of matters asserted therein," and applied that limit to Plaintiff's own request. Doc. 13 at 2. The same limit governs the Court's notice of Docs. 245 and 330, which establish that Plaintiff pled guilty, that a special master was appointed, and that two motions were denied. They do not establish that this action is a collateral attack, that the sister court is overseeing the Damovo sale, or that Plaintiff's challenges are "increasingly specious."

The word "specious" does not appear in Doc. 330. That order denied a motion to remove the Special Master on grounds relating to his dual functions and his compensation, Ex. 3 (Doc. 330) at 4–9, and did not address ex parte communications, because the motions presenting that issue (Docs. 331, 332) were filed the day Doc. 330 was docketed, and the sworn account of "daily (or near daily)" communications (Doc. 343) came afterward. Those motions and Plaintiff's motion for reconsideration of Doc. 330 (Doc. 347) are pending, and his direct appeals, Nos. 26-4309 and 26-4310 (4th Cir.), are in briefing. Ex. 12. No court has found Plaintiff's challenges specious, and the one order the Court cited did not reach the challenge that matters most.

**B. The record of the process to which this Court deferred.**

Plaintiff sets out the following not to ask this Court to decide questions pending elsewhere, but because the Order's deference assumes a neutral, court-supervised officer.

*The appointment.* The Special Master was appointed under 18 U.S.C. § 3664(d)(6) and Fed. R. Civ. P. 53. Ex. 1 (Doc. 56) ¶¶ 3–4. Rule 53(b)(2)(B) requires an appointing order to state "the circumstances, if any, in which the master may communicate ex parte with the court or a party." This order states none. A direction to "consult with the Parties,"

which the United States reads as authorization, Ex. 8 (Doc. 341) at 3, 16, says nothing about communication with one party outside the presence of the other.

*The Special Master's own description.* In his August 7, 2026 response to Plaintiff's motion to disqualify him, the Special Master wrote that he "has conducted an independent investigation . . . outside of the rules of evidence or criminal procedure," that "[f]rom the outset, the Special Master has had ex parte communications with various interested parties," that he "has gained and reviewed private information not subject to public disclosure," and that he "is functioning like an examiner, not as an 'adjudicator.'" Ex. 2 (Doc. 288) at 10. Plaintiff himself was never permitted to speak with him. Decl. ¶ 5.

*The sworn account.* In response to Plaintiff's motions to compel, the Special Master's counsel swore that he "continue[s] to communicate about this Case outside the presence of both the government and Defendant's counsel with third parties on a daily (or near daily) basis," that he had not "tallied" the Special Master's one-on-one communications, and that not every document requested was provided, citing "a desire to preserve the free-flow of information to the Special Master." Ex. 7 (Doc. 343) ¶¶ 9–10, 24. The United States does not deny direct communications with the Special Master; it says they were authorized by the appointing order and are "more analogous to those routinely had by the United States Probation Office." Ex. 8 (Doc. 341) at 16, 19–20; Ex. 9 (Doc. 331-2) at 25–27. On June 12, 2026, it conditioned its support for Plaintiff's motion to delay reporting to the Bureau of Prisons on "his continuing to cooperate with the Special Master's efforts." Ex. 13. A probation officer has no duty of neutrality, files a report that is disclosed and subject to objection under Fed. R. Crim. P. 32, and does not liquidate the defendant's estate.

*Beckett.* In December 2025 a Primary Restitution Asset independently appraised at approximately $1 billion was sold with no motion to, and no order from, the sister court, and "did not yield proceeds that can be distributed as restitution payments." Ex. 3 (Doc. 330) at 9 n.4; Ex. 2 (Doc. 288) at 14–15. Damovo is Beckett again, at four times the size, with the competing offer and its rejection in writing.

**C. Ex parte communication disqualifies a special master, and de novo review does not cure it.**

Section 455 applies to special masters. Fed. R. Civ. P. 53(a)(2); *In re Brooks*, 383 F.3d 1036, 1043–46 (D.C. Cir. 2004). In *Brooks*, a master whose ex parte contacts "may reasonably be expected to color the way in which he approaches his task" was disqualified, and the court rejected de novo review as a cure because it "does not solve the problem of 'unchecked and uncheckable' partiality." Id. at 1045–46. The accused "is entitled to a neutral and detached judge in the first instance." *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972); *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909–10 (2016) (failure to recuse is structural error). These principles apply because MVRA restitution is "plainly criminal punishment." *Ellingburg v. United States*, 607 U.S. ___, No. 24-482 (Jan. 20, 2026). Plaintiff asks only that this Court not characterize as "specious" a challenge resting on the Special Master's own written admission, his counsel's sworn account, an appointing order permitting none of it, and authority holding that such contact disqualifies a master.

**D. The constitutional question need not be decided here.**

The Court need not resolve the constitutional questions to grant this Motion. The dispositive fact is undisputed: the Special Master says he cannot and will not stop the

Damovo sale, and the sister court says it lacks authority over the parties conducting it. Ex. 4 (Doc. 334) at 3–5; Ex. 3 (Doc. 330) at 6–7. Whatever he is, he is not overseeing this sale. This Court is the only court with the trustee, the chief executive, and the trust before it, and its obligation to exercise jurisdiction is "virtually unflagging." *Colorado River*, 424 U.S. at 817.

## III. The alternative grounds support, at most, denial of ex parte relief without prejudice—not denial of a noticed preliminary injunction with prejudice.

### A. Rule 65(b)(1)(A) governs ex parte TROs, not preliminary injunctions on notice.

The Order found no irreparable harm "so imminent that Defendants cannot be heard," quoting Rule 65(b)(1)(A) and *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974). Doc. 13 at 3. That is the standard for a TRO without notice. Plaintiff accepts the answer: Defendants can be heard, and he has given them notice. Decl. ¶ 8. What he sought in the alternative is the Rule 65(a) hearing at which both sides are heard. The Order nonetheless denied the preliminary injunction with prejudice, without a hearing, on the ex parte standard. *Granny Goose* teaches that "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides." 415 U.S. at 438–39. That principle cuts both ways: an injunction may not issue without notice, and neither should it be finally refused on a record neither side has developed. The denial with prejudice was premature.

**B. The record establishes irreparable harm under the Tenth Circuit's standard.**

Irreparable harm is injury that is "certain, great, actual 'and not theoretical'" and cannot be adequately compensated in money. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). The standard is met where a movant is denied its interest in income-producing property and suffers "unquantifiable damages," *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210–11 (10th Cir. 2009), and where "[d]ifficulty in collecting a damage judgment may support a claim of irreparable injury," *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986). Each is present. Damovo is held through foreign subsidiaries; once conveyed to a foreign purchaser, no order of this Court can restore it. The transaction generates no proceeds from which a judgment could be satisfied, and the differential—$400 million against zero—is the difference between a written offer from a listed acquirer and the purchaser's own representation to the Wake County court. Ex. 11 ¶¶ 6, 8–9.

**C. Rule 65(c) does not require denial of relief to a movant who cannot post a bond.**

Trial courts have "wide discretion under Rule 65(c)," *RoDa Drilling*, 552 F.3d at 1215, and may dispense with a bond where "there is an absence of proof showing a likelihood of harm" to the party enjoined. *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987). A status-quo order restraining a transaction that, by its proponents' account, generates no proceeds for the trust—while a $400 million alternative remains on the table—inflicts no cognizable damage on the trust or on

Damovo. The only persons who could claim damage from delay are those paid only if the zero-proceeds sale closes.

**IV. The Order's statement regarding consent should be corrected.**

The Order states that the Special Master was appointed "with Plaintiff's consent." Doc. 13 at 2. Plaintiff's plea agreement did require consent to a special master. Ex. 3 (Doc. 330) at 2–3. But consent to a "neutral and disinterested" special master, Ex. 2 (Doc. 288) at 2, is not consent to ex parte communication "from the outset" and an investigation "outside of the rules of evidence or criminal procedure," id. at 10, learned of only in August 2026. Decl. ¶ 5. A party cannot consent to what he was not told. *Williams*, 136 S. Ct. at 1909–10.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court: (1) hear Plaintiff under Fed. R. Evid. 201(e) and take judicial notice of Exhibits 1 through 13 for the positions stated in them; (2) reconsider and vacate the Order (Doc. 13) insofar as it characterizes this action as a collateral attack, declines jurisdiction, and denies Doc. 11 with prejudice—or, alternatively, make the denial without prejudice; (3) set the preliminary-injunction request in Doc. 11 for expedited briefing and hearing on notice under Rule 65(a), with Plaintiff participating by video; (4) pending that hearing, direct Defendants to give fourteen days' written notice before any closing of a sale or other disposition of the Damovo Group or any equity interest in or material asset of it; (5) set any Rule 65(c) security at a nominal sum; and (6) grant such further relief as is just.

Dated: September 30, 2026.

Respectfully submitted,
/s/ Greg E. Lindberg
Greg E. Lindberg, Plaintiff, pro se
gelindberg@gmail.com · 1-919-308-9686

**CERTIFICATE OF SERVICE**

I certify that on September 30, 2026, I submitted the foregoing Motion, with the accompanying Declaration, Exhibits 1 through 13, and proposed order, to the Clerk of Court for filing through the Court's pro se e-mail filing procedure, and that on the same date I served copies by e-mail and by first-class United States mail on the following:

Hugh Steven Wilson, Trustee — Steve@hswilson.com

Chris Nickerson — chris.nickerson@damovo.com; cnickerson@laresconsulting.com; and by first-class mail at Breckenridge, Colorado

Ian Quigley, Group General Counsel, Damovo Group, on behalf of UK Atlanta Holdings LLC, Damovo Global Services (UK) Limited, Damovo Deutschland GmbH & Co. KG, Damovo Ireland Limited, Damovo Schweiz AG, Damovo Luxembourg S.à r.l., and Damovo Costa Rica SRL — ian.quigley@damovo.com

Marvin Maerz, Lincoln International GmbH, as sell-side advisor to the sellers and for transmission to John Doe Buyer Company — mmaerz@lincolninternational.com

/s/ Greg E. Lindberg
Greg E. Lindberg